```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     OCALA DIVISION
```

ALFRED OLIVER WALLACE,

        Petitioner,

v.                                Case No:   5:11-cv-325-Oc-29PRL

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS and FLORIDA
ATTORNEY GENERAL,

        Respondents.
_____/

## OPINION AND ORDER

Alfred Oliver Wallace ("Petitioner") initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 by filing a petition (Doc. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought by Petitioner should not be granted (Doc. 4).  Thereafter, Respondents filed a response in compliance with this Court's instructions and with the Rules Governing Section 2254 Cases in the United States District Courts (Doc. 6).  Petitioner filed a reply to the response (Doc. 10).

Petitioner raises one claim in his petition.  He alleges that the prosecution breached "the express and implied terms of Petitioner's plea agreement in violation of his due process rights under the United States Constitution." (Doc. 1 at 5).

Because this Court can "adequately assess [Petitioner's] claim without further factual development[,]" an evidentiary hearing will not be conducted. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Upon due consideration of the petition, the response, the reply, and the state court record, this Court concludes that Petitioner's claim should be denied.

I.     **Background and Procedural History**

On October 18, 2007, Petitioner was charged by information in Case No. 07-CF-4212 with burglary of a dwelling, grand theft, attempted burglary of a dwelling, and aggravated assault with a deadly weapon (Ex. 1).[1]

On April 2, 2008, pursuant to a written plea agreement, Petitioner pleaded guilty as charged and was sentenced as a Prison Releasee Reoffender to concurrent terms of fifteen, five, five, and five years in prison (Ex. 2; Ex. 3). The sentences were to run consecutively to a five year sentence imposed for Petitioner's violation of probation in Case No. 99-CF-2108 (Ex. 2; Ex. 3). Petitioner also pleaded guilty in Case No. 07-CF-4211 to burglary of a dwelling and grand theft and was sentenced as a Prison Releasee Reoffender to ten months in prison and five

---

[1] Unless otherwise noted, references to Exhibits are to those filed by Respondents on September 22, 2011 (Doc. 8).

years of probation (Ex. 4; Ex. 5; Ex. 6). Petitioner did not file a direct appeal from any of his convictions or sentences.

On February 24, 2009, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") disputing his designation as a Prison Releasee Reoffender and arguing that the State had not abided by the terms of the plea agreement (Ex. 7). The postconviction court denied Petitioner's claim that the State had not abided by the terms of the plea agreement, but ordered that an amended judgment and sentence be filed to clarify the court's original intention at sentencing (Ex. 8). Petitioner appealed the order to the Fifth District Court of Appeal which affirmed the denial of Petitioner's second claim, but directed the trial court to correct Petitioner's grand theft judgments to remove the Prison Releasee Reoffender designation (Ex. 11); Wallace v. State, 25 So. 3d 1269 (Fla. 5th DCA 2010).

On January 12, 2011, Petitioner filed a new Rule 3.850 motion arguing that newly discovered evidence provided an alibi showing that he could not be guilty in Case No. 07-CF-4211 (Ex. 14). On January 23, 2011, Petitioner filed a Rule 3.800 motion contesting the ten month sentence in Case No. 07-CF-4211 (Ex. 15). The postconviction court denied relief on the Rule 3.850 motion and ordered a response from the State on the Rule 3.800

motion (Ex. 16). The Fifth District Court dismissed the Rule 3.800 motion for lack of jurisdiction and otherwise *per curiam* affirmed (Ex. 17); Wallace v. State, 70 So. 3d 602 (Fla. 5th DCA 2011).

Petitioner filed the instant petition in this Court on May 31, 2011.

**II.     Governing Legal Principles**

*a. The Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the

decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identified the governing legal principle, but applied it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000) or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it

5

must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155.

Finally, the Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (dictum). When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). See, e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### b. *Statute of Limitations*

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the AEDPA, a one year period of limitation applies to the filing of a habeas petition by a person in custody

pursuant to a state court judgment. This limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Here, Petitioner does not allege, nor does it appear from the pleadings or record, that the statutory triggers set forth in §§ 2244(d)(1)(B)-(D) apply. Therefore, the statute of limitations is measured from the remaining statutory trigger, which is the date on which Petitioner's conviction became final. 28 U.S.C. § 2244(d)(1).

Petitioner was initially sentenced on April 2, 2008. Consequently, that judgment of conviction became final thirty days later on May 2, 2008. See Gust v. State, 535 So.2d 642, 643

7

(Fla. 1st DCA 1988) (holding that when a defendant does not appeal his conviction or sentence, the judgment and sentence become final when the thirty-day time period for filing an appeal expires). Respondents assert that because May 2, 2008 is the pertinent date of finality, the instant petition is untimely filed and barred from this Court's consideration (Doc. 6).

Petitioner counters that his sentence was corrected on June 24, 2010, and pursuant to Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286 (11th Cir. 2007), this is the operative date from which his sentence should be calculated (Doc. 10 at 1-2). In Ferreira, the Eleventh Circuit addressed the issue of what constitutes a judgment for purposes of the AEDPA's statute of limitations when a petitioner is resentenced in state court, but, like Petitioner, raised claims relating only to the original conviction. Id. at 1293. The Eleventh Circuit concluded that the judgment on resentencing is the proper judgment to trigger the federal limitations period because a judgment is based on both a conviction and a sentence. Id. Under the reasoning in Ferreira, Petitioner's corrected judgment became final on July 24, 2010, and he had until July 24, 2011 to

file a habeas petition.[2]  The instant petition was filed on May 31, 2011, and the Court concludes that it was timely.

### III.     Analysis

Petitioner asserts that the guilty pleas he entered in Case Nos. 2007-CF-4211 and 2007-CF-4212 were not knowing, voluntary, and intelligent, but were instead, "induced by unfulfilled promises in violation of clearly established federal law as determined by the United States Supreme Court and in violation of the United States Constitution[.]" (Doc. 1 at 7-8). Specifically, Petitioner alleges that Assistant State Attorney Peter Brigham ("Brigham") promised Petitioner that if he pleaded guilty, Brigham would conduct an investigation into Petitioner's alibi defense and would investigate an alternate suspect whom Petitioner believed to be the actual perpetrator of the crimes (Doc. 1 at 7).  Petitioner asserts that, if Brigham had fulfilled the promise and investigated, he would have eventually been exonerated and released from prison. Id. at 8.

---

[2] The state court record does not appear to contain a copy of the corrected judgment, but the order from the trial court to file an amended judgment was issued on June 24, 2010, and the Court will use this date as the date of his corrected judgment (Ex. 13).

9

Petitioner raised this claim in his first Rule 3.850 motion, and the postconviction court denied the claim as conclusively refuted by the record:

> In ground two, Defendant claims that the State has not abided by all of the terms of the plea agreement. Defendant claims that the State promised Defendant that an investigation would be conducted after Defendant entered his plea, into possible suspects who may have committed the crimes Defendant was accused of. Although the State and Defendant may have discussed other suspects, there was no agreement or promise by the State to conduct any further investigation mentioned at the sentencing hearing or in the written plea agreement. *See attached* Waiver of Rights and Plea agreement, signed by Defendant on April 2, 2008; Transcript of Change of Plea and Sentencing dated April 2, 2008. Therefore Defendant's claim in ground two is refuted by the record and without merit.

(Ex. 8). A review of the record supports the postconviction court's conclusions.

At his plea colloquy, Petitioner repeatedly agreed that he was giving up all defenses to the charges against him in exchange for a fifteen year sentence (Ex. 8 at 6, 9, 19, 20).[3] The court specifically inquired as to Petitioner's understanding:

---

[3] Petitioner's decision to plead guilty, despite his alleged alibi, was not unreasonable. He faced at least sixty years in prison if convicted at trial (Ex. 8 at 4). In addition, the prosecution agreed to drop another charge in pending Case No. 2008-CF-1068 in exchange for the plea. Id.

> And I think Mr. Brigham eluded to the fact you might have some defenses to these charges and – you know, if you went to trial you may be found not guilty. You may be found guilty, you know, that's a right that you have, and by pleading guilty you're giving up that right.

Id. at 20. Petitioner affirmed that he understood. Id. The court inquired about the nature of Petitioner's alleged defenses, and Brigham explained that Petitioner claimed to be working in Indiana at the time of the burglaries and that a man named Glenn Kessing was the actual burglar. Id. at 23. Brigham said that he interviewed Kessing, but did not find him credible. Id. Brigham noted that Petitioner had not provided contact information for any of his alleged alibi witnesses in Indiana. Id. at 23-24. Petitioner was asked whether he wanted to say anything to the court before the imposition of sentence, but he indicated that he did not wish to do so. Id. at 25.

Petitioner's own representations to the trial court during his plea colloquy constitute "a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); see also Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir. 1991) ("If a defendant understands the charges against him, understands the consequences of a guilty plea and voluntarily chooses to plead

11

guilty, without being coerced to do so, the guilty plea will be upheld on federal review."). Petitioner clearly indicated to the trial court that he knew he waived all defenses to the counts against him by entering a plea and that he was willing to do so in exchange for a fifteen year sentence (Ex. 8 at 9).

In addition to Petitioner's assertions at trial that he understood that he waived all defenses, Petitioner signed a plea agreement which stated:

> ***I have not been promised any reward nor has it been suggested that I will be rewarded in any manner, or that I will be given any leniency other than the terms set forth in this document, in return for my entering this plea.*** No person has used any threats, force, pressure or intimidation to induce me to make this plea.  No promises concerning gain time or potential release dates have been made to me.

(Ex. 2) (emphasis added).  The plea agreement did not indicate that the state attorney's office would continue to investigate Petitioner's crime after he entered a plea.  Both the plea colloquy and the plea agreement support the postconviction court's conclusion that "there was no agreement or promise by the State to conduct any further investigation mentioned at the sentencing hearing or in the written plea agreement." (Ex. 8).

Petitioner asserts that the postconviction court erred by relying solely upon the plea colloquy and the plea agreement to reject this claim (Doc. 10).  He suggests that Respondents have

12

purposefully omitted relevant evidence from the record by failing to include with their response a transcript of the plea negotiations between Brigham and Petitioner. Id. at 5. Petitioner notes that the transcript was "made part of the record in the state trial court" and that the transcript shows that he was "led to believe that even if he plead guilty, an investigation would continue into his alibi, and if verified, would result in withdrawal of the plea and subsequent exoneration." Id. at 7-8. Indeed, at the plea colloquy, Brigham informed the court that he had recorded the plea negotiations and that "those plea negotiations are a matter of record." (Ex. 8 at 4).[4]

---

[4] Although they were recorded, it does not appear that the State had the plea negotiations transcribed for the record on appeal. Petitioner had the recording of the meeting transcribed for the purposes of his federal habeas petition and included it as an attachment to his reply (Doc. 10). This Court concludes that consideration of the transcript is not barred by Cullen v. Pinholster, 131 S. Ct. 1388 (2011)(review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits). Unlike the petitioner in Pinholster, Petitioner is not seeking to introduce new evidence in a federal habeas corpus proceeding. Rather, he is seeking to augment the record to include the transcript of a meeting that was discussed at his plea colloquy and was the subject of his second claim in his Rule 3.850 motion (Ex. 7 at 8) (referencing the "county jail recorded interview"). Moreover, although it does not appear that the recording was transcribed before Petitioner had it done, there is nothing in the record to suggest that the postconviction court did not listen to the recording; it was brought to the court's attention at the plea colloquy (Ex. 8 at 4).

13

The transcript does not convince this Court that the postconviction court's rejection of this claim was unreasonable. To the contrary, the transcript makes clear that Brigham explained to Petitioner that he could have a <u>public defender</u> look into his defenses and that Brigham would hold open the plea offer until the public defender had a chance to investigate (Doc. 10 at 20).[5] Brigham offered to ask the judge to appoint a public defender to look into Petitioner's alleged alibis. <u>Id.</u> at 23-24.

After Petitioner attempted to explain to Brigham his innocence and the witness' mistaken identification of him as the burglar, the following exchange occurred:

> PETITIONER: And he kept saying – he didn't say, you're the man. He says, this is the truck that was at my house trying to burglarize my house. This girl had this truck and came to my house.
>
> BRIGHAM: Okay. Well, here's – here's what I suggest you do, Mr. Wallace, and you – I'm not your attorney, but this is life advice. I think you ought to go to the judge and ask for a public defender, if you can't hire another private attorney because, you know –
>
> PETITIONER: I mean –
>
> BRIGHAM: -- we're talking about fifteen years here.

---

[5] Prior to his negotiations with Brigham, Petitioner had fired his attorney and was representing himself (Doc. 1 at 6).

(Doc. 10 at 26-27). After Petitioner vacillated on whether he should plead, Brigham told him to "[t]hink about a PD because whoever they give me in Indiana, I will talk to them" and "[i]f you get yourself a new lawyer, I'll keep [the plea agreement] open." Id. at 45-46. Petitioner expressed his understanding, noting, "but I have to get a PD and let it be investigated, and then if it goes to the point where we're at now, the offer's still on." Id. at 49. Brigham stressed to Petitioner that he could wait to sign the plea agreement until after his public defender had investigated the alibi defenses, but once he was sentenced, Petitioner would have to give the state fifteen years. Id. at 50.

At no point in the plea negotiations did Brigham offer to undertake the investigation himself or to further investigate Petitioner's alibi defenses after he signed the plea agreement. Rather, Brigham repeatedly urged Petitioner to have a public defender look into the plea agreement and the alibi defenses, and indicated that he would consider evidence brought forth by the public defender. However, Brigham made it clear that if Petitioner accepted the plea offer, he would receive at least fifteen years in prison (Doc. 10 at 19, 20, 23, 24, 26, 28, 30, 45, 46, 49).

15

Accordingly, in addition to being refuted by the plea colloquy and the plea agreement, the transcripts of the plea negotiations compels a conclusion that Brigham did not offer to investigate Petitioner's alibi in exchange for a guilty plea. Therefore, Petitioner's assertion that the postconviction denial of this claim was based upon an unreasonable determination of the facts is conclusively refuted by the record, and this claim is denied. 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. Certificate of Appealability

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the

issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El, 537 U.S. at 336 (citations omitted). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Alfred Oliver Wallace is **DENIED,** and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a Certificate of Appealability and leave to proceed *in forma pauperis*.

3. The Clerk of the Court is directed to terminate all pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, this   4th   day of November, 2013.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4 10-29
Copies to: All parties of record